IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| H.U. and B.U., parents and natural guardians of K.U., a minor,<br><br>*Plaintiffs*,<br><br>v.<br><br>COLONIAL NORTHAMPTON – IU 20,<br><br>*Defendant*. | Case No. 5:18-cv-3896-JDW |

**MEMORANDUM**

K.U. suffered a sexual assault while on a van ride home from school. The incident is particularly distressing because all of the students on the van suffer emotional, psychological, and educational disabilities. K.U., and her parents H.U. and B.U., want to hold the Colonial-Northampton Intermediate Unit 20 liable for creating the danger that led to the assault on K.U. Their desire to hold someone responsible is understandable. But the law does not allow a claim against the IU in these circumstances. The Court will therefore grant the IU's summary judgment motion.

I.   **FACTUAL BACKGROUND**

K.U. is now 17 years old. She has a lengthy history of neurological and pediatric disorders that cause significant learning disabilities. As a result, she does not attend a mainstream school classroom. Instead, at the time at issue in this case, she attended Colonial Academy. The IU operated a van to transport K.U. and approximately 3-4 other students to the school. Two IU staff rode on the van with the students: the driver Elaine Souders and a monitor Melanie Young. The IU did not train Ms. Souders or Ms. Young to deal with peer-to-peer sexual contact, nor was either of them aware of an IU policy about such contact, other than to report it.

The students on the van generally had assigned seats. K.U. normally sat alone. However, at some point in December 2017, K.U. became uncomfortable that a student named "Anthony" was looking at her. So K.U. asked Ms. Young if she could sit with another student, A.J.. At that time, A.J. was approximately 12 or 13 years old. A.J. had a history of inappropriate physical contact with his peers—mostly violent contact. IU staff had described him as "extremely disrespectful" and "aggressive (verbally and physically)." (ECF 47-12.) He had "hit [people] either with a closed fist or items." (ECF 47-13.) He had also threatened peers with violence.

Ms. Young allowed K.U. to switch seats and to sit with A.J.. That seating arrangement appears to have worked for a couple days. However, at some point in late December (possibly December 18, 2017, though the date is uncertain), A.J. sexually assaulted K.U. on the van ride home from school. He groped her, he forced her hand down her pants, and he forced her to perform oral sex on him. This incident led K.U. to act out over the next several days. On December 22, 2017, she confided with one of her teachers about the incident. K.U.'s behavior escalated, and she had to be hospitalized on two occasions. Her doctor has concluded that she has suffered permanent psychological damage.

K.U.'s parents H.U. and B.U. filed this action on her behalf. In their complaint, they assert that the IU violated K.U.'s substantive due process rights by creating a dangerous condition that led to her harm. The IU has moved for summary judgment. The Motion is now ripe.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *See Celotex*, 477 U.S. at 323.

### III.   ANALYSIS

As a general rule, the state does not have an affirmative obligation to protect its citizens from the actions of other private citizens. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997). One exception to this rule is the state-created-danger doctrine, which "embodies the principle that the government has an obligation under the Fourteenth Amendment's Due Process Clause to protect individuals against dangers that the government itself creates." *Sauers v. Boro. Of Nesquenhoning*, 905 F.3d 711, 717 (3d Cir. 2018) (quote omitted). To prove a state-created-danger claim, a plaintiff must show four elements:

> (1) The harm ultimately caused was foreseeable and fairly direct;
>
> (2) A state actor acted with a degree of culpability that shocks the conscience;
>
> (3) A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

> (4) A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006) (quote omitted). Plaintiffs base their claim on this exception to the general rule.

### A.     Affirmative Use of Authority

The fourth element of a state-created-danger claim "asks whether the state's conduct created or increased the risk of danger to the plaintiff." *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 242 (3d Cir. 2016). Although the line between action and inaction "is not always easily drawn," a plaintiff cannot "redefine clearly passive inaction as affirmative acts." *Morrow v. Balaski*, 719 F.3d 160, 177-78 (3d Cir. 2013). One way to assess the distinction is to consider "the 'status quo' of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo." *L.R.*, 836 F.3d at 243.

Here, the evidence shows that K.U. sat alone on the bus until a few days before A.J. assaulted her. Then, K.U. asked Ms. Young to move seats, and Ms. Young agreed. When Ms. Young agreed, she exercised her authority to permit a change of the status quo on the bus. The facts here track the facts in *L.R.*. There, a kindergarten teacher permitted a student to leave the class with an unknown, unvetted adult. The teacher exercised discretion to permit a change in the status quo. Here, Ms. Young exercised her discretion to permit a change in the status quo of assigned seating on the bus. And, like the kindergarten students in *L.R.*, the intellectually-disabled students here could not exercise the judgment to decide for themselves where to sit.

The analysis differs if Plaintiffs' claim is that the IU should have told Ms. Young, Ms. Souders, or other transportation staff about A.J.'s history. The status quo was always that the

transportation staff did not know about A.J.'s history. Indeed, Plaintiffs' concede in their brief that "[i]n the months leading up to the sexual assault it was clear that something was going on with A.J.—yet no one alerted the transportation staff." (ECF No. 47-2 at 8.) No one from the IU changed the personnel on the van or did anything else to change the status quo to lead to that ignorance. Thus, the failure to inform the transportation staff about A.J.'s history cannot give rise to a state-created-danger claim.

### B. Foreseeable and Fairly Direct Harm

To show that a harm was foreseeable and fairly direct, a plaintiff must show "an awareness on the part of the state actors that rises to the level of actual knowledge *or an awareness of risk* that is sufficiently concrete to put the actors on notice of the harm." *L.R.*, 836 F.3d at 245 (emphasis in original; quote omitted). Here, there is evidence that A.J. had a history of acting out against his peers. In the months leading to A.J.'s assault of K.U., he bullied and threatened to punch, stab, kill, and beat up his peers. He also had a history of physical altercations with peers, often leaving his space to hit or fight with peers. This history makes it foreseeable that he would engage in unwanted physical contact with a peer.

The Court notes that A.J. had no history of conduct that had been classified as "sexual." But what took place in this case was not consensual sexual contact. It was an invasion of K.U.'s person. The Court will not draw a distinction between a sexual assault and a different type of physical assault. Indeed, there does not seem to be a principled way to distinguish the two, at least in these circumstances. Both are physical acts targeted against another person.

The problem for Plaintiffs is that they have to show an awareness "on the part of the state actors" of the foreseeable risk. Here, the only state actor who committed an affirmative act was Ms. Young. But Ms. Young did not know about A.J.'s history of violence. So to her, the harm was

5

not foreseeable. Plaintiffs try to get around this problem by noting that many students in the IU's student population have impulse control problems and histories of violence. But Plaintiffs cannot base their claim on the entire student population. If they could, then every risk would be foreseeable. Instead, they must base their claim on the risks that A.J. himself presented.

### C.     Shocks the Conscience

Whether conduct shocks the conscience depends on the context in which the action takes place. In a "hyperpressurized environment, such as a high-speed police chase, intent to harm is required. But in situations where deliberation is possible and officials have time to make unhurried judgments, deliberate indifference is sufficient." *Id.* at 246 (quote omitted). Here, Ms. Young had the opportunity to deliberate on her decision to permit K.U. to sit with A.J.. Indeed, she made the decision days before the assault and could have reversed the decision—and restored the status quo—during the ensuing days. So a deliberate indifference standard applies.

Ms. Young did not act with deliberate indifference to K.U.'s rights because she did not know that A.J. was a threat. Her decision to permit the two students to sit together does not, on its own, shock the conscience or exhibit deliberate indifference. In their opposition, Plaintiffs point to the lack of training that IU employees received and to the IU's failure to inform them of A.J.'s history. But those were not the affirmative acts on which Plaintiffs can base a state-created-danger claim, so they do not matter for purposes of this analysis. And, Plaintiffs cannot attribute to Ms. Young the IU's knowledge about A.J.'s history. The IU can act only through its employees, and each employee can act only based on the knowledge she has (or for which she has constructive knowledge). Ms. Young did not have actual or constructive knowledge about A.J.'s history, and that fact is dispositive here.

### D. Relationship

There must be a relationship between the state actor and the plaintiff such that the plaintiff was a foreseeable victim of the state actor's conduct. *See id.* at 247. Plaintiffs have satisfied this element. K.U. was one of the discrete number of students that Ms. Young monitored and for whose benefit the seating arrangements were in place.

### IV. CONCLUSION

The Court empathizes with K.U. and her parents. The assault on her was deeply troubling. Unfortunately, they have not mustered the facts to prove their state-created-danger claim—the only claim that they assert. Therefore, the Court will grant the IU's summary judgment motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**HON. JOSHUA D. WOLSON**

September 4, 2020